# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 8, 2013

## STATE OF TENNESSEE v. ROY DEMOND DUNCAN

**Direct Appeal from the Circuit Court for Madison County**
**No. 11-358     Roy B. Morgan, Jr., Judge**

---

**No. W2012-00834-CCA-R3-CD  - Filed June 7, 2013**

---

Defendant, Roy Demond Duncan, was convicted by a jury for attempted second degree murder, aggravated assault, and employment of a firearm during the attempt to commit a dangerous felony.  The trial court merged Defendant's aggravated assault conviction with his attempted second degree murder conviction and sentenced him to ten years, and Defendant received a sentence of ten years in Count 3 to be served consecutively, for a total effective sentence of 20 years.  Defendant raises the following issues on appeal: 1) the trial court erred by giving a jury instruction as to Count 3 that unduly influenced the jury to find Defendant guilty of attempted second degree murder; 2) Defendant could not properly be convicted of both attempted second degree murder and employing a firearm during the attempt to commit a dangerous felony; and 3) the trial court erred by not bifurcating the trial to allow the jury to determine if Defendant had a prior felony conviction at the time of the offenses for the purposes of determining Defendant's sentence.  After a careful review of the record, we affirm Defendant's convictions but remand this case for a jury determination regarding Count 3 as to whether Defendant had a prior felony conviction pursuant to Tenn. Code Ann. § 39-17-1324(f).  Upon remand, the trial court shall also enter a corrected judgment in Count 3 to reflect that the offense for which Defendant was convicted in Count 3 is a Class C, rather than a Class D, felony.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Trial Court Affirmed in Part, Reversed in Part, and Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JERRY L. SMITH and D. KELLY THOMAS, JR., JJ., joined.

Mike Mosier, Jackson, Tennessee, for the appellant, Roy Demond Duncan.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hinson, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Rolf Hazelhurst, Assistant District Attorney General, for the appellee, the State of Tennessee.

OPINION

*Facts*

On March 2, 2011, Mashanay Nelson and her brother Semaj Nelson were visiting from California to attend their uncle's funeral in Jackson. They were walking down a street with their cousins when they encountered a group of people sitting outside of a house, and an altercation ensued. The other group got into a car and began "chasing" Samaj and his family. Samaj heard a gunshot. The Nelsons ran into a friend's home. The other group followed, and the fighting continued inside the house. Samaj and Jarsten Clark began fighting inside the house. Mashanay saw Defendant follow Samaj and Mr. Clark into the house and shoot her brother in the back. Samaj testified that he was shot "[i]n the top part of [his] neck, in the middle of [his] spine." Samaj fell to the ground, and Mr. Clark ran out of the house. Samaj testified that he suffered nerve damage and had no "feeling in part of [his] arm." Samaj could not identify Defendant at trial as the shooter or one of the people inside the house. Mashanay testified that she had "no doubt at all" that it was Defendant who shot Samaj.

Jarsten Clark testified that he was incarcerated at the time of trial for charges stemming from the incident. He testified that he and Defendant went to the house where the shooting occurred to "protect" Clark's "little stepbrother," Raheem. Clark was fighting with a "little dude" when "a shot rang out" and the man he was fighting "just stopped fighting." Mr. Clark testified that he did not take a gun into the house and that he did not shoot anyone.

Shomari Peterson, who was fourteen years old at the time of the shooting, admitted that he gave a statement to the police about the incident, but testified that most of his account given in the written statement was based on what he "heard off the street." In his statement, Peterson told police that Raheen called him and told him that "somebody was trying to fight him on Holland Street." He told police that he saw Jarsten hit Semaj, that Semaj ran into the house, and that Jarsten and "Macho" ran inside behind him. He stated that they were fighting in the living room, and "Jarsten was holding Semaj and Macho put the gun to his back and shot[,]" although he denied at trial that he told that to police. He also denied being shown a photo lineup after the incident. He denied that he knew someone by the name of "Macho." He testified that he did not see Defendant shoot anyone.

Chris Chestnut, an investigator with the Jackson Police Department, testified that he interviewed Shomari Peterson following the incident. He showed Peterson a photo lineup that he prepared. He testified that Peterson signed the photo lineup and wrote "Picture Number 5 shot somebody on Linden Street." Officer Chestnut testified that photograph number five was of Defendant. He also interviewed Defendant following the incident.

Defendant refused to give a written statement and told Officer Chestnut that he was not at the scene of the shooting and that he did not shoot anyone.

Defendant did not testify or offer any other proof at trial.

Following a sentencing hearing, the trial court considered the evidence at trial and the presentence report and imposed a sentence of ten years for Count one and a consecutive ten-year sentence to be served at 100 percent release eligibility for Count 3, resulting in a total effective sentence of 20 years.

*Analysis*

Defendant asserts that the trial court erred by giving a jury instruction that "placed undue emphasis on the indicted offense of second degree murder, and made it more likely for the jury to convict [Defendant] of attempted second degree murder" than aggravated assault. The State responds that the trial court's instructions accurately reflected the law, and therefore, the instruction was not error.

The grand jury originally returned an indictment against Defendant charging him with "employ[ing] a firearm during the commission of or attempt to commit a dangerous felony, to wit: Attempted Second Degree Murder and/or Aggravated Assault." The trial court subsequently granted the State's motion to delete the words "and/or Aggravated Assault." The State made the motion because aggravated assault is not one of the dangerous felonies enumerated in Tenn. Code Ann. § 39-17-1324(b)(1), which makes an offense to "employ a firearm" during the commission of or attempt to commit a "dangerous felony." A person may not be charged with the offense, however, if "employing a firearm is an essential element of the underlying dangerous felony as charged." Tenn. Code Ann. § 39-17-1324(c). Attempted second degree murder is one of the enumerated dangerous felonies. *Id*. § 39-17-1324(i)(1)(B). Aggravated assault is not one of the enumerated dangerous felonies. *See id*. The trial court's instruction to the jury as to Count 3 reads as follows:

> Any person who employs a firearm during the commission of or attempt to commit a dangerous offense is guilty of a crime.

> For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

> Part B:

(1)     that the defendant employed a firearm;
                and
(2)     that the employment was during the *commission of or attempt to commit SECOND DEGREE MURDER*;
                and
(3)     that the defendant acted either intentionally, knowingly or recklessly.

(Emphasis in original).

Defendant objected to the proposed jury instruction. In his argument to the trial court, defense counsel stated:

> [DEFENSE COUNSEL]: Judge, I have given a lot of thought to this over the weekend after our conferences last week, and I feel like – what I feel like the Court is going to impose as far as Count 3, which is the indicted violation of 39-17-1324, will draw undue attention to the offense of attempted second degree murder and virtually give the jury no real choice. I think that it kind of locks them in. I think that they can figure out that that obviously is the charge that the Defendant will receive a greater penalty for because it alludes only to attempted second degree murder.
>
> Now, something else that I'd like to raise that I didn't raise in our prior informal discussion, I'm looking at this statute, 39-17-1324(f). It says:
>
> "In a trial for a violation of subdivision (a) or (b) where the State is also seeking to have the person sentenced under (g)(2) or (h)(2), the trier of fact shall first determine whether the person possessed or employed a firearm."
>
> That's the ultimate question. Then the statute goes on to say that:
>
> "If the trier of fact finds in the affirmative that a firearm was employed, proof of a qualifying prior felony conviction pursuant to this section shall then be presented to the trier of fact."
>
> So Count 3 should charge the ultimate question whether or not a firearm was employed.

-4-

The trial court then noted that defense counsel's objection was a sentencing issue and not one pertaining to jury instructions. The trial court commented, "[t]he jury in this case in no way participates in sentencing. It's not the jury's job to do that." At trial, as he has on appeal, Defendant has merged the separate and distinct issues of whether the trial court's instructions to the jury on Count 3 were proper and whether the trial court's procedure in sentencing Defendant on Count 3 was proper. We address these issues in turn and initially conclude that Defendant was not unfairly prejudiced by the trial court's jury instructions.

In his brief, Defendant "candidly acknowledges that the charge as given by the trial court constituted an accurate statement of the law." However, Defendant contends that the jury "may well have only convicted [him] of aggravated assault" had the jury charge not "singled out the attempted second degree murder charge and linked only it to the weapons charge[.]" The State responds that for the trial court to have included aggravated assault in the jury instructions on Count 3 would have contravened the statute and been a misstatement of the law. The State also contends that the record does not support Defendant's assertion that the jury charge unduly influenced the jury's verdict. We agree with the State's argument.

The facts in this case do not support any other "dangerous felony" upon which Defendant's firearm conviction could be based. The dangerous felonies which may serve as a predicate for the firearms offense are statutorily enumerated. Tenn. Code Ann. § 39-17-1324(i)(1). They include attempted second degree murder. *Id*. § 39-17-1324(i)(1)(B). They do not include aggravated assault. *Id*. Therefore, if the trial court had included aggravated assault in its instructions to the jury, that would have been a misstatement of the law. Additionally, the record is devoid of any evidence to support any of the other statutorily enumerated dangerous felonies. "'[W]hen a statute contains different ways to commit the offense it proscribes, the instruction given to the jury should be limited to the precise offense alleged in the charging instrument to the exclusion of the remaining theories.'" *State v. Jeremiah Dawson*, No. W2010-02621-CCA-R3-CD, 2012 WL 1572214, at *8 (Tenn. Crim. App. May 2, 2012), *perm. app. denied* (Tenn. Sept. 20, 2012) (quoting *State v. Wayne E. Mitchell*, No. 01C01-9209-CR-00295, 1993 WL 65844, at *3 (Nashville, Mar. 11, 1993), *perm. app. denied* (Tenn. July 6, 1993)). In this case, there was only one offense upon which Defendant's employment of a firearm conviction could be based. *See e.g. Jeremiah Dawson*, 2012 WL 1572214, at *8 (holding that the State is required to elect when multiple dangerous felonies are alleged in indictment for violation of section 39-17-1324); *see also State v. Ricco R. Williams*, No. W2011-02365-CCA-R3-CD, 2013 WL 167285, at *9 (Tenn. Crim. App. Jan. 14, 2013) (reversible error to include predicate felonies not permitted by section 39-17-1324(c) in the jury instruction). As evident by its verdict, the jury accredited Ms. Nelson's testimony that it was Defendant who shot her brother in the back. The evidence is overwhelming that Defendant used a firearm during the commission of his attempt on Mr.

Nelson's life. Therefore, we conclude that Defendant was not prejudiced by the trial court's instruction.

Defendant also asserts that his convictions in counts one and three cannot stand because Tenn. Code Ann. § 39-17-1324(c) prohibits prosecution for employment of a firearm during the commission or attempt to commit a dangerous felony when the employment of a firearm is an essential element of the underlying felony. Defendant points to language in the indictment that alleged that Defendant attempted to commit the offense of second degree murder by "shooting" the victim. The State responds that although the indictment alleges Defendant shot the victim, the use of a firearm is not an element of second degree murder; therefore, Defendant's convictions are valid. We agree.

The indictment in Count 1 reads:

> [O]n or about March 2, 2011, in Madison County, Tennessee, and before the finding of this indictment, [Defendant] did unlawfully, intentionally, and knowingly attempt to kill SEMAJ NELSON, by taking the following substantial step, to-wit: shooting the said SEMAJ NELSON, in violation of T.C.A. § 39-13-210 and T.C.A. § 39-12-101, all of which is against the peace and dignity of the State of Tennessee.

The State asserts that the word "shooting" in the indictment was mere surplusage. Although the indictment includes an allegation that Defendant used a firearm in furtherance of an attempt to commit second degree murder, that does not make the use of a firearm an essential element of the offense of attempted second degree murder. Second degree murder is defined as "[a] knowing killing of another[.]" Tenn. Code Ann. § 39-13-210. "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense[,] . . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3). Second degree murder may be accomplished without a firearm.

In other cases, this court has affirmed convictions for possessing or employing a firearm during the commission of a dangerous felony where the underlying felony was attempted second degree murder accomplished with a firearm. *See State v. Stacy Allen Bullard*, No. E1999-00796-CCA-R3-CD, 2000 WL 277314, at *8 (Tenn. Crim. App. at Knoxville, March 15, 2000), *perm. app. denied* (Tenn., Sept. 11, 2000) (the defendant's use of a firearm was an applicable enhancement factor because it is not an element of the offense of second degree murder); *see State v. Anthony Tony Sandy*, No. M2001-02376-CCA-R3-

CD, 2003 WL 213776, at \*7 (Tenn. Crim. App. at Nashville, Jan. 30, 2003), *perm. app. denied* (Tenn., May 27, 2003) ("As in a conviction for second degree murder, the use of a firearm is not an essential element of voluntary manslaughter.") (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)).

Defendant relies upon *Anthony D. Byers v. State*, No. W2011-00473-CCA-R3-PC, in which a panel of this court reversed the defendant's conviction for possession of a firearm during the commission of a dangerous felony where the defendant was also charged with and convicted of especially aggravated kidnapping. In that case, we concluded that the State's use of the term "firearm" in the indictment precluded the defendant's conviction for especially aggravated kidnapping, which "as indicted," required proof that the kidnapping was accomplished with a deadly weapon. *See* Tenn. Code Ann. § 39-13-305(a); *Byers*, at \*8.

The State distinguishes *Byers* because in that case, proof that the defendant used a firearm was used to establish an essential element of the offense, i.e. the kidnapping was accomplished with a deadly weapon. In this case, proof that Defendant used a firearm was not necessary to establish an essential element of the offense of attempted second degree murder. Defendant is not entitled to relief on this issue.

Both parties agree on appeal on the issue concerning the trial court's failure to conduct a bifurcated hearing in order to allow the jury to determine whether Defendant had a prior felony conviction at the time he employed a firearm during his attempt to commit a dangerous felony, as alleged in Count 3.

Defendant was convicted in Count 3 for a violation of Tenn. Code Ann. § 39-17-1324(b), employing a firearm during the commission of a dangerous felony, which is a Class C felony, punishable by a mandatory minimum sentence of six years. Tenn. Code Ann. § 39-17-1324(h)(1). If a defendant has a prior felony conviction at the time of the offense, however, the mandatory minimum sentence is ten years. Tenn. Code Ann. 39-17-1324(h)(2).

Generally, a trial court may not enhance a defendant's sentence on the basis of judicially determined facts, other than the fact of a prior conviction. *Cunningham v. California*, 549 U.S. 270, 288-89 (2007); *State v. Gomez*, 239 S.W.3d 733, 740 (Tenn. 2007). Therefore, the Sixth Amendment is not implicated when a defendant's sentence is increased based on a prior conviction. However, Tenn. Code Ann. § 39-17-1324(f) specifically provides for a jury determination as to a prior felony conviction:

> In a trial for a violation of subdivision (a) or (b), where the state is also seeking to have the person sentenced under subdivision (g)(2) or (h)(2), the trier of fact shall first determine whether the person possessed or employed

a firearm. If the trier of fact finds in the affirmative, proof of a qualifying prior felony conviction pursuant to this section shall then be presented to the trier of fact.

In *State v. Jonathan Doran Tears*, No. M2009-01559-CCA-R3-CD, 2010 WL 4674264 (Tenn. Crim. App. Oct. 26, 2010), *perm. app. denied* (Tenn. Mar. 9, 2011), the defendant was convicted for a violation of Tenn. Code Ann. § 39-17-1324 and sentenced accordingly. A panel of this court affirmed the defendant's sentence. The opinion notes that evidence of the defendant's prior felony convictions was admitted at the sentencing hearing, and the trial court noted at the sentencing hearing the defendant's prior convictions and the statute providing for a mandatory ten-year sentence. However, the opinion does not state whether there was a bifurcated hearing in order for the jury to determine the defendant's prior convictions, nor did the defendant raise as an issue on appeal a violation of Tenn. Code Ann. § 39-17-1324(f).

At the sentencing hearing in the case *sub judice*, the following discussion was had regarding sentencing under Tenn. Code Ann. § 39-17-1324:

THE COURT: And then on Count 3?

[ASSISTANT DISTRICT ATTORNEY]: On Count 3, Your Honor, it would be by statute 10 years at 100 percent.

THE COURT: And it would be by statute?

[ASSISTANT DISTRICT ATTORNEY]: Yes, Your Honor, Statute 39-17-1324.

THE COURT: But my only question is, how does it run with Count 1 and 2 having merged?

[ASSISTANT DISTRICT ATTORNEY]: It would run consecutive.

THE COURT: That's my – By statute it is.

[ASSISTANT DISTRICT ATTORNEY]: By statute it would be consecutive, and by statute it would be 100 percent.

THE COURT: [Defense counsel], you agree?

[DEFENSE COUNSEL]: Yes, sir, that's what the law says.

THE COURT: Just wanted to get that on the record before we proceed.

The presentence report was then admitted into evidence without objection. The report indicated that Defendant had prior convictions for aggravated burglary and robbery and was sentenced to serve three years. In response to the State's request that the trial court apply as a statutory enhancement factor that Defendant employed a firearm during the commission of the offense, defense counsel stated as follows:

> . . . . I would submit to you that at least, insofar as his adult felony convictions, which I believe are for aggravated burglary and robbery, those have already been used in this case to apply 39-17-1324 in. . . . [Defendant's prior felony convictions] ha[ve] been used to enhance him and make 39-17-1324 applicable to him insofar as the enhanced 10-year sentence. . . .

Neither defense counsel nor the State requested a bifurcated hearing at trial. Although defense counsel referenced Tenn. Code Ann. § 39-17-1324(f) in the context of the trial court's proposed jury instructions, neither party raised at sentencing the issue of Tenn. Code Ann. § 39-17-1324(f) requiring a jury determination as to Defendant's prior felony convictions. Nevertheless, both parties assert on appeal that it was error for the trial court not to conduct a bifurcated sentencing proceeding as prescribed by statute, and the State suggests a new jury trial on this narrow issue is necessary. Therefore, we remand this case for a new jury trial in Count 3 to determine whether Defendant had a prior felony conviction at the time of the offense in Count 1.

Finally, we note that the judgment in Count 3 three incorrectly states that the offense is a Class D felony. As we stated, Tenn. Code Ann. § 39-17-1324(h)(1) provides that the offense is a Class C felony. Upon remand, we direct that the trial court also enter a corrected judgment reflecting that the offense is a Class C felony.

## CONCLUSION

Having reviewed the record before us, we affirm Defendant's convictions. However, we reverse and remand Count 3 for a new jury trial in accordance with Tenn. Code Ann. § 39-17-1324(f), solely for a jury determination as to Defendant's prior felony convictions for the purpose of imposing a greater sentence. Upon remand, the trial court shall also enter a corrected judgment in Count 3 to reflect that the offense of employing a firearm during the commission of a dangerous felony is a Class C felony. The judgment in Count 1 is affirmed.

_____
THOMAS T. WOODALL, JUDGE

-9-